Good morning, may it please the court. Time permitting, I intend to address two issues today, two main issues. First, whether there's extraterritorial jurisdiction over the sole count in the superseding indictment under 18 U.S.C. section 1956F. And secondly, whether the admission of appellant's confession and incriminating evidence seized by FBI agents from his cell phone violated the Fourth Amendment. And I will address those both with respect to the plain error version of the claim and the ineffective assistance of counsel version of the claim. I'll begin with the extraterritorial jurisdiction issue. I want to address three sub-issues. First, the applicable standard of review. Second, the fact that section 1956F is a jurisdiction-limiting statute. And third, application of the lingering doubt standard, which is a component of the presumption against extraterritorial application of a statute. Regarding the standard of review, this court should engage in de novo review and not plain error review of the statutory interpretation issue for three separate reasons. First, the district court ruled on this issue after briefing in an oral argument, wrote a written published opinion on it. Second, analogous to the issue of whether civil diversity jurisdiction exists under 28 U.S.C. section 1332, the issue of whether extraterritorial jurisdiction exists under section 1956F unquestionably is an issue of subject matter jurisdiction. The Supreme Court's decision in Arbol in 2006 explicitly says, if a statute uses the word jurisdiction, it is referring to subject matter jurisdiction. And they drew the analogy to 1332. Well, 1956F is very analogous to 1332, and therefore, it can be raised at any point. I did raise it in a little court, but I'm also permitted to raise it for the first time on appeal, and it should receive de novo review. This is not a merits issue. This is a subject matter jurisdiction issue. And then The Supreme Court in Fowler v. United States made it clear that in addressing a threshold statutory interpretation issue that relates to assuming this is a sufficiency of the evidence as opposed to a jurisdictional question, you should engage in de novo review of that threshold statutory interpretation issue as the court did in Fowler. Finally, even if this court were to apply a full-fledged plain error review standard, the error is plain based on the Supreme Court's well-established rules concerning extraterritorial jurisdiction of a jurisdiction limiting statute. Section 1956F is such a statute. It explicitly limits. It does not create jurisdiction. The government and the district court and a couple of other courts around the country that have interpreted this, and there have not been many cases, they've all just assumed this statute gives jurisdiction. It does not. It limits jurisdiction. The Supreme Court in Microsoft said that the presumption against extraterritoriality, including the all-important lingering doubt standard, remains instructive in determining the extent of the statute. So we're talking about applying the lingering doubt standard to a jurisdiction limiting statute. If there's any doubt after reviewing the text and the legislative history of that statute, there is no extraterritorial jurisdiction. We're not dealing with an ordinary criminal statute where the government's trying to apply it in an extraterritorial manner. That's what most of these cases involve. This is different. This is a jurisdictional limiting statute and that's the key. Were there victims in the United States? Yes, your honor. And there were, so they were, part of this offense is a single count of a money laundering conspiracy. Part of it, at least, maybe the most important part, occurred within the confines of the United States, correct? That's true if it were a substantive offense. It's a conspiracy. One count. Part of it occurred in the United States. Part of it occurred overseas. What you're arguing for is that they can't use the evidence of what occurred overseas. They can only use what happened in international borders, my friend. Your question, your honor, is a good one. I'm not too sure of that. I'm not just a red herring, what you're talking about. Well, here's the problem for them. Here's the problem. And the governor says that in their brief, and Judge Wren sort of says it too, in his opinion. He wrote a big, long opinion on this thing. He actually didn't discuss this issue very much. He discussed another issue. The government talks hard. If the government is proving a conspiracy, they're not confined to the evidence of what happened with respect to it in this country. They can prove it occurred in another, in 100 more countries. They want to, or were able to, and if it did occur. What your honor is saying would be true if they had, the government had charged. I'm saying it's not true. I think, I don't think I'm off base much on this. Well, here's the problem. I've been in this criminal business for a long time. So again, turning to the language of 1956 F, which the court has to look at the text as well as the citizen. And it also refers to the statute only applies to the conduct prohibited by the sub section. That has to mean what you're charged and convicted of. It can't mean other things. It's basic that you have to have, and it says in the case of which the Supreme Court says that's a prosecution or a cause of action. So the only thing that matters here is the conspiracy charge. And Whitfield said very clearly in 2005 that the only elements of money laundering conspiracy are the formation of an agreement. There is no over act requirement. There's no transaction requirement. It's a silver over back fireman, but you can lose a lot of evidence and proven the conspiracy of my friend of what went on. You certainly can offer that a trial. I'm not saying the government couldn't offer that in a conspiracy. You have to prove the crime. Government can offer their whatever evidence they have wherever they can, just like the wherever, just like the categorical approach. The court is limited to the elements of the offense. Whitfield says the elements are a formation of a criminal conspiracy. That's it. No conduct, no actions. Nothing along those lines can be considered as an element. Now, prove conspiracies by proving the substantive offenses all the time. But the language of the statute says there is extraterritorial jurisdiction over the conduct prohibited by the subsection. That has to mean you are limited to looking at what's charged in the indictment. They did not charge him with a substantive offense under 15 1956 a. They solely charged him with a conspiracy offense. The statute we're talking about here was written in 1986. Have you given up this claim on the superseding indictment? No, I'm not giving it up. I'm just putting I'm putting my powder in what I consider my best claim. You think these other two issues are your solids? No, I'm going to address the fourth. I'm going to rely on the brief on the statute of limitations. I believe it's adequate. So if I could go back to the extraterritorial jurisdiction issue. So you've got to look at each part of 1956 F. So over the conduct prohibited by this subsection clearly means what you're charged with. It cannot mean what evidence was offered. This is like the categorical approach. Secondly, in the case of a non United States citizen, the conduct occurs in part in the United States in the case of means in the prosecution. That's the only way to interpret in the case of even if it's ambiguous. This is also very important under the lingering doubt standard. This is not the rule of lenity. I don't have to show a grievous ambiguity. I only have to show any doubt. And if there's any doubt either in the language, the text of the statute, or in the legislative history, we win. That's that's the strength of the lingering doubt standard. So there are two parts I really want to talk about here now. One is that the term the conduct occurs in part in the United States. We spent a lot of ink in our briefs fighting about what that means. At the very least, it is ambiguous based upon wit field. This is a very, this is very important. That's clear as the bell. Conduct occurs in part in the United States. The American citizen co-conspirator conduct. So there is no overt act requirement. Therefore, what a co-conspirator does or doesn't do in the United States is irrelevant to the elements of the offense. The sole elements of the offense for this statute, unlike a traditional 371 conspiracy, is the defendant agreed to commit a crime. There's no question that was solely done in Nigeria. Appellant did not enter the United States for two years after the conspiracy ended. He came on an F1 student beat, and that's when they arrested him. Of course, they agree with themselves. They got to agree with somebody else. Correct. Correct. But you don't want one person conspiracy, my No, I understand. But a person in the case of a non-United States citizen means you're looking at the non-United States citizens conduct. You're not looking at a co-conspirator's conduct. At the very least, there is. What a co-conspirator does under settled principles of conspiracy law, what one does, they all do. That's true. What one does, they all do. The agency relationship governs that. What one conspirator does is attributed to everyone else who was a conspirator at the time the act occurred, wherever it occurred. That is true in a traditional 371 conspiracy. It's not true. That's true in conspiracy law in the federal courts, as far as I'm concerned. It is true for purposes of looking at traditional conspiracy law. I've tried dozens of these conspiracy cases. You've got to filter that. Your Honor, you have to filter that through section 1956F. It is a jurisdiction-limiting statute. If there's any doubt that Congress was at all unclear about what this means, and there's clearly doubt for this reason, that statute was written in 1986 before the conspiracy statute provision was added to the money laundering statute. It was never amended thereafter. It was written for a substantive offense. It was not written for a conspiracy offense. There's another reason. 1956F.1.2. It requires, also for extraterritorial jurisdiction, it requires there to be a transaction in excess of $10,000. There is nothing in the transaction. There's nothing. You can just agree to do a money laundering offense, and you've violated the law. Again, the government, what they're trying to do is they're trying to put a square peg of a substantive extraterritorial offense statute, which was written in 1986, when there was only a substantive offense in 1956A, and they're trying to put the conspiracy into that square peg into a round hole. It doesn't fit. Transaction is not an element of conspiracy, nor is conduct. Even if what Your Honor is saying were to be filtered correctly through 1956F regarding F1, it doesn't work with F2. Again, this statute puts extra things on the government to prove to be able to exercise jurisdiction. So traditional conspiracy principles and Pinkerton and all of that, they don't apply to 1956F based on its express language. And then you also have to look at the legislative history. So if you look at the Senate report, which is the leading thing, it says that the statute's intended to limit jurisdiction. It is not the committee's intention to impose a duty on foreign citizens operating wholly outside of the United States to become aware of U.S. laws. Mr. Ojokin was entirely outside of the United States during this time. It's not talking about co-defendants in the United States or co-conspirators. It's talking about defendants where the government's trying to exercise extraterritorial jurisdiction. They have to do something. And in a conspiracy under 1956H, you don't have to do anything other than agree. You cannot, therefore, exercise extraterritorial jurisdiction over somebody in that situation. They could have charged him with aiding and abetting a substantive count. They did not. They only charged him with conspiracy. And they're stuck. They're stuck because there's ambiguity at the very least in 1956F. Briefly, the Fourth Amendment claim. The law and the facts are clear. It was not raised in the court below, argued in his plain air. I'm alternatively arguing as an effective assistance of counsel claim. Payton versus New York, New York versus Harris, and Jardines versus Florida all stand for the proposition that what happened in this case was an unlawful entry into a home without valid consent or alternatively staying beyond the limited scope of consent given. There was getting the confession and getting the cell phone contacts after the Iron Curtain, so to speak, had fallen on the Fourth Amendment. It's all tainted fruit. New York versus Harris makes it very clear the remedy is suppression. The government's attenuation arguments don't work. The remedy is suppression. The law was clear. The facts were clear. Therefore, it's both reversible as plain air. And alternatively, this is one of those rare cases where it conclusively is shown on the record deficiency. And I've discussed the prejudice in my brief. Thank you. Thank you, sir. Mr. Pelletieri. Thank you, Your Honor. I may please the court, John Pelletieri on behalf of the United States. The prosecution of Mr. Oshigokun for money laundering conspiracy was proper under either step one or step two of the framework for evaluating extraterritoriality that the Supreme Court has set forth a number of recent cases. Step one asks whether there has been a, whether the presumption against extraterritoriality has been rebutted. So the presumption is that Congress intends to only legislate for conduct that occurs within the territorial jurisdiction of the United States. But then, so that's the presumption. And then the court looks using all the tools of statutory interpretation to determine whether there's a clear indication that that presumption is rebutted and that the statute does apply to extraterritorial conduct. Here, there is an express extraterritoriality provision in 1956 F and it provides as relevant here that there is extraterritorial jurisdiction over the conduct prohibited by this section. If in the case of a non-United States citizen, the conduct occurs in part in the United States. So there are two questions. Number one, what is the conduct prohibited by this section? And number two, did this conduct occur in part in the United States? Because it's undisputed that Mr. Ojibokun is a Nigerian citizen. So the conduct here is a money laundering conspiracy prescribed by 1956 H. Now, a conspiracy, the Supreme Court has made clear that the actus reus of a conspiracy, even one that does not is the actus reus. It's conduct. That is a, it's a, it's a partnership in crime, a criminal venture. And that criminal venture. So let's get, good. I like the way you start in terms of getting into some staginess. You're saying the mere agreement is conduct? Yes, Your Honor. And I would, I would, uh, I would. How could that be? You just having a conversation with someone, that's conduct? It is a criminal conspiracy. It's an agreement toward a, to a partnership. But you, but see, here's the thing is that you, you're saying that talking to someone and they're agreeing with what you said is conduct. Absolutely, Your Honor. And let me, I'll, I'll put you, point you to the Shabani case in the Supreme Court, 513 U.S. 10 at 16 says the prohibition against criminal conspiracy does not punish mere thought. The criminal agreement itself is the actus reus and has been so viewed since Regina V. Bass, which is a 1705 British case. And this is fully consistent with the law of venue. The law of venue looks. Well, if that's the case, then there's no limitation to this extraterritorial. That means that no one has to be, uh, in the United States other than some one person on the phone and you spoke to them and you're a non-citizen and you agreed, you said that's, that's enough. If you enter, if you enter the agreement also. Yes. Yes. If you enter into a criminal conspiracy, if some person is in Nigeria and another person is in the United States, that criminal agreement has occurred in both Nigeria and the United States, both places. It is a criminal partnership in crime among individuals in both locations. And that is fully consistent, Your Honor, with the law of venue. I mean, the law of venue asks, you know, it asks the Supreme, the constitution says that crimes have to be prosecuted where they have been committed. And then, um, to determine where the crime has been committed, the Supreme Court said in Rodriguez Moreno that a court must initially identify the conduct constituting the offense and then discern the location of the commission of the criminal acts. And this court said in Smith that proper that venues proper only to district in which an essential conduct element of the took place. And you just said conduct element, but there is no conduct element to this. For your honor, this court in every court has concluded that venue for conspiracy is proper in any jurisdiction where one of the co-conspirators is present at the formation of the agreement that, because that is where the conduct occurs in any jurisdiction where that the defendants are present with the co-conspirators are present. Yeah. But normally it would be in requires some act in furtherance. You'll grant true everyone in the, everyone in the conspiracy, but your honor, this court is, go ahead. This court has said that a conspiracy offense takes place. And this is in a balance. And you said it in levy auto parts. We cited in our brief that wherever the agreement was made and that's here in Nigeria and the United States or, or wherever any overt act and furtherance of the conspiracy transpires. So there's two ways of evaluating the location of the conspiracy. Number one, the location of the conspirators at the time of the formation of the agreement and the conduct for the conspiracy takes place in every single one of those jurisdictions at the time of the formation of the partnership in crime. And number two, wherever any overt act and furtherance of the conspiracy takes place. And this court has applied and the Supreme Court has applied that in Whitfield itself in a case where a, um, a, uh, a statute, a conspiracy statute does not require as an element proof of an overt act, but nonetheless, even though it's not an element over to act, it's not an element that conspiracy, the conduct occurs in any place where overt acts and furtherance of the conspiracy take place. And that is fully consistent with the circles. Now you're saying venues appropriate for wherever the act occurs. That's true. You got to get back to the front end. No act, no act or conduct is required for a conspiracy for money laundering, right? The actus reis, an actus reis is an act. That is the definition of an actus reis. No, the actus reis in a sense is the bad thing. No, it's the, it's the act and not the mental state. So an act and the Supreme Court has said the actus reis actus reis of a criminal conspiracy is the criminal agreement. Two people come together and we cited also, that's generally so, but it hasn't ever been said that in a sense that that means that for money laundering is a little different. It's kind of a different type conspiracy. No, your honor. It's not. It's a, it's a, it's a, the same. And in, in, in, in Whitfield, I think the court said, look, this is, uh, effectively by not the language of the statute effectively, uh, encompass common law conspiracy. So that, that's did not require an overt act. And, uh, it's, this is longstanding law that a conspiracy involves conduct. That is the agreement at a minimum, the agreement. And in addition, overt acts and furtherance of the agreement, but at a minimum, the agreement and that conduct, the agreement, the criminal partnership occurs wherever individuals are present at the formation of the agreement. And it's undisputed in this case that there was a co-conspirator present in the United States, in Maryland at throughout the entire agreement as formation and throughout the entire criminal conspiracy here. And that is why, um, the conspiracy occurred under the plain language of a night of the statute occurred in part, just has to occur in part in the United States. Now, for the same reason, you know, and very similar reasons, step two of the, um, of the extraterritoriality, um, framework also establishes that the, the, uh, prosecution of Mr. Ojiboko was proper in this case, that inquiry looks, what is the object of the statutes solicitude? And in other words, it's focused, which can include the conduct it seeks to regulate the parties and interests it seeks to protect or vindicate. And if that conduct relevant to the statutes focus occurred in the United States, then the case involves a permissible domestic application. And, um, we've cited all these cases, um, going back to Ford in the, in the Supreme court that have held that a criminal conspiracy there's jurisdiction in the United States for a criminal conspiracy. When a, uh, the, the, there's an individual who's formed, who's in president United States when it's formed. And when there's overt acts and furtherance of the conspiracy take place in the United States, that also is longstanding law that establishes that the solicitude of, um, of the object of the statute, the statute solicitude, the criminal conspiracy, the partnership in crime, the collective criminal venture, that's the occurred in the United States. And that is what is being prohibited here. That's the focus here. And it occurred in part sufficiently in part in the United States so that this is a domestic application. So whether you look at it through the lens of the explicit express, um, extraterritoriality in 1956 F or under step two, um, under the, uh, of the framework, this is a proper prosecution of the defendant here. And I'll briefly, and now for all those reasons, um, this court can simply assume that the review and affirm for the, for these reasons. But, um, it's our view that Mr. Oshidoku needs to satisfy the plain error standard. He failed to preserve this claim. And, um, Mr. Oshidoku has raised a few, few reasons why he thinks. Jurisdiction can be raised at any time. Subject matter, jurisdiction can your honor and the Supreme court in Morrison made clear. Why are you trying to argue? Your honor in, in Morrison and in all the cases following Morrison have made clear. So in Morrison, the lower court said that if we don't have any jurisdiction, we don't have any jurisdiction. Your honor, this is not a matter of subject matter. Maybe I'm, I may be simpler than some of you. Your honor, I don't know. I don't know how you get plain error we can recognize that or obliged to even on our own with no, if none of the lawyers ever raised jurisdiction. Your honor, I would direct the court to Morrison and this court's, um, application of Morrison and Harris, both of them are cited in our brief. What happened in Morrison was the lower court, the second circuit treated the extraterritorial reach of a statute as a matter of subject matter, matter of jurisdiction. And justice Scalia's opinion in Morrison said, um, said, no, that that's just wrong. The, the, the, the, the subject matter jurisdiction goes to the power of the court to adjudicate. And the court had a power to adjudicate whether the scope of the statute, what, what the issue here, it's a merits question as to the reach, reach of the statute. And he said it really wasn't jurisdiction. I'm sorry, your honor. I couldn't hear you. Well, I'm sorry. It sounds like he said it's not really jurisdiction. It's on the merits. Yes, exactly. That's what, that's what Morrison said. And that's what this court said in Harris, where it said, okay, because the extraterritorial reach of a statute is go to the merits, then it's subject to all forfeiture and waiver and procedural default rules. And, um, so that's in If you're looking at it that way, you can do it, I guess. Yes. Yes, your honor. I got another question that, that fellow, your colleague there on the other side, um, doesn't, didn't argue his, uh, superseding indictment claim, um, that you're satisfied with your brief on that and judge Grimm's ruling? Um, we are satisfied, but I'm happy to go into it. Uh, the issue here, uh, I'll just let you rest on your brief. If you want to, I just want to make sure that you don't, you're satisfied. You don't need to argue it too. Your honor. Um, I'm happy to go through it. And maybe if the court has questions, we can, we can discuss those. I mean, the issue is whether the superseding indictment relates back to the original indictment and the standard there. Right. And judge, you all said it did judge Grimm said it did, and they say it didn't and they briefed it extensively, but then they don't, he didn't argue it. And I just didn't want you to get mousetrapped by it because anyway, I thought it was interesting. Uh, and the other question, uh, there's a claim in the ineffective counsel, and this is a direct appeal, but they do have a claim of ineffective counsel against somebody. Do you know which lawyer they're talking about? Um, I believe it would be the trial counsel, your honor for, uh, failing. I thought there were two of them. There was a, there was one lawyer and then they got a, maybe then the public defender came in. I think Mr. Um, the defendant was, was, uh, was, was, um, represented by, I believe CJA counsel at trial. I don't know if earlier, I believe that earlier the federal defender may have been initially appointed. Uh, I don't know the answer to that, your honor, but I know at trial and at the, at the, at the time when the suppression motions were filed, uh, the defendant was represented by, I believe by a CJA lawyer. And, um, that's the moment when any kind of suppression claims had to be filed before trial, um, at the deadline set by the court. Yes. Go ahead. Oh, sorry, your honor. But, um, a couple of points. I mean, as to the ineffective assistance claim, um, this court has, has never, uh, has never permitted a remand, um, for additional fact finding. It's, it has identified three different ways that a defendant can raise an ineffective assistance claim. One is in a rule 33 motion in the district court. That wasn't done here. It's not an issue. Number two is on appeal. If it's conclusive from the the, uh, the circumstances here. And then number three on collateral review under 2255. It's normally a thing for collateral review. I was just, I was trying to figure out who was supposed to be constitutionally ineffective, but you don't know either. Well, it's the CJA, it's the CJA lawyer. I don't know his name, but the CJA lawyer who represented, um, Mr. Oshidokun in the district court at the time he filed his, um. Well, we know the CJA lawyer now. No, he's not here now. There's a CJA lawyer on appeal, in the appeal. How many lawyers does this fellow have? Can you tell me that? I, I believe, I believe at least three, um, but I, I don't know definitively, okay. All right, I'm, that, that helps because I, so just two, but, uh, uh, I wouldn't, it wasn't clear to me, uh, but the, but we shouldn't be reaching any of that stuff. That's for, uh, yes, you should, uh, position. That's the normal position and that's normally what we do. Yes, yes, yes. Um, and, and briefly, just the suppression claim is, um, in our view is, is fully waived. It's not, um, there's nothing for this court to review because the rule of 12 requires that a defendant show, file a suppression motion and raise any suppression claims prior to trial and a district court can, or a court, it says, can consider a suppression claim subsequently only if the defendant establishes good cause. And, uh, the thing here, no, your honor, there was no consideration of the suppression claim in the district court. Yes, he did your honor. Um, and then on appeal, Mr. Oshadokun is raising an entirely new suppression claim that he did not raise. Yeah. All right. And that claim under rule 12 is barred for any review, a plain error or otherwise, because, uh, there has been no attempt to show good cause, let alone a showing of good cause. Um, and, uh, we cited the cases that we do recognize that there's disagreement among the courts of appeals. Um, some courts will, uh, will allow, um, appellate review on plain error without showing good cause. Um, but the majority view and the view that what we believe is correct, um, is that a defendant must show good cause either in the district court or the court of appeals. And that if the defendant does not show good cause, there's no appellate review of a suppression claim on appeal. Um, and this court has left it open. It has not gone one way or the other. Um, I can say like most recently in the fall case, which is 955 F third, three 63 at three 73. The court didn't make clear that it's an open issue in this court. We did cite cases that have applied the waiver rule, but there are also cases where the court has reviewed for plain error. We think that the reason that the court did that in those cases is because the government didn't assert, um, waiver. And so we essentially waived waiver, but, um, we're not waiving waiver here. Um, we're asserting that the defendant has to show good cause and therefore you cannot establish, you cannot review the, um, the suppression issue. And, but even if you were under a plain error review, uh, there's no plain, there's no error here, let alone plain error. Um, the, uh, the, um, there was consent to enter the home. Um, it's not clear, obvious on this record that the consent was not knowing and that the, the, that the interview was within the scope of the consent. And even if you assume that there was no consent and that the intrusion into the home somehow violated the fourth amendment, this court's decision in Sideman, um, precludes any finding of error, let alone clear, obvious error. Um, that, that case is really resolves this, this case. Um, I, uh, well, when they walked in, was he under arrest? No, your honor. No, they had a warrant that says to arrest him forthwith. Did it not? They wanted to approach him to see whether he would volunteer. I know what they wanted to do, but they had a warrant that said he should be, he's under arrest forthwith. And we all know what forthwith means. So when they, when he answered the door, they had the, that paper duly authorized, right, by authorities, he was, he was under arrest. No, your honor, he was not under arrest, um, until he was placed in custody. He, they had the authority, the constitutional authority to place him under arrest. They did not exercise that constitutional authority. You think at that point when he walked, could he leave? Yes, that's what that, that, well, if he tried to leave, then he would have been arrested, but he was, he was a voluntary. He was on, he, he was, so you're saying they have to put their hands on him for him to be under arrest? They have to place him under arrest, your honor. Do they have to put their hands on him for to be under arrest? No, your honor, that's not the law, but here if you look, it's not the law, but they did have papers that instructed them that says forthwith execute this arrest warrant, correct? Uh, I don't know, your honor. I, I, I, I don't recall, but I, I will. I'm assuming that it does. Yes. Yeah. Maryland. I'm sorry. I couldn't say where was that? That was, that was in, um, Illinois, your honor, Illinois, Illinois. Yes. He was in the United States. All right. Yes. He was in college. He was in a PhD program in Illinois and right. They got, they had the warrant in their pocket when they went to see him. Correct. And this was all litigated as a fifth amendment Miranda issue in the district court. Was he in custody? That's not what it was. And that's not on appeal. That's not, there's no, there's no claim that there was error in that, in that, um, in that determination on appeal. The only claim is that the entry into the home violated the fourth amendment. And therefore the voluntary interview must be, um, must be suppressed, but that's, that's contradicted by Sideman where a, uh, a government cooperator entered into a home without consent and then engaged in a conversation that he recorded with the defendant. And this court said, we're going to assume that entering to the home was a violation of the fourth amendment, but that voluntary conversation was not the tainted fruits of that. And here there's no way of finding clear, obvious error under Sideman. It's just, there's, it, it, it doesn't follow, um, from that. So again, so there's no question of whether he was in custody. It's, it's accepted. That may be an argument, but it's certainly, you're right. It wasn't raised here. Wasn't raised there. Wasn't raised with the district court. Yes. I mean, the issue in the fifth amendment custody, that's not what's at issue. Yeah. I mean, what happened was they were outside and they didn't search the house or anything. No. And the district court went all into this when he said, uh, when he talked about how they didn't even conduct a security sweep or anything, what happened is they, and this is on the transcript and the reporting, the agents said, can we talk to you? And, and they indicated, they indicated, you know, whether, you know, inside or outside, it was, you know, they were indifferent to that. And he said, Oh, either way. And they said, Oh, can we go inside? He said, yeah, sure. So they went inside. It really was for the convenience of, um, the defendant there. It wasn't for any investigative purpose because they didn't search the house. There was no, there was no fourth amendment intrusion inside the house. There was no search or anything. He, the agents would have been perfectly happy. There's this question. If they had told him that what the truth was, I mean, I was told in the situation that they had a rest warrant for him. Could they have talked to him and asked him those 140 some questions without reading his rights? Well, I think that at that point, um, there would have been a totally different calculus as to whether he was in custody on her and under Miranda. Yeah. Under Miranda. So under Miranda, they had told him that, you know, that we have a warrant for your arrest. Yeah. Didn't take hold of him and then things up and said, I want to talk to you. He would have to read rights, right? I believe that's correct, your Honor, because it's an objectively reasonable standard known to the defendant. So at that point he knows he's under arrest and so he can't leave. So, um, so then you get into the custodial interrogation, um, parameters of Miranda. Yes. If you're in custody, you have to be read your rights and you have to waive them. But he was not, the district court here found he was not in custody. That's not a challenge on appeal. Um, and what's, what's act. And so instead of focusing and trying to evaluate this through a fifth amendment Miranda lens, um, the defendants decided to take an entirely new fourth amendment tack, um, which asks, which is saying that, oh, well, going into the house, even though I agree that the attack on the fourth amendment, you're absolutely right. It's a different question. All right. That's fine. Jerry, did you try this case? I did not, your Honor. Um, we are, this is the criminal comment, the criminal appellate section in Washington DC. And we were handling the appeal for the U S attorney's office in Maryland. This expert, it's obvious. You've done a, you've done a real good study of it. Thank you, your Honor. And if there aren't any additional questions we would ask that the court affirmed. Thank you, Mr. Potts. Eric. Thank you. Mr. Newton. Yes, your Honor. I want to keep coming back to something that's critically important concerning the first issue. Everything has to The language of F1 says the charge, the conduct, it means the charge conduct by a United States is by a United States citizen. Or in the case of a non United States citizen, the conduct occurs in part in the United States. That's not particularly clear language. Clearly, if you're talking about a United States citizen who does something abroad, it's just that citizen's conduct by a United States citizen, not what a coach conspirator does. The next clause, or in the case of the United States, a non United States citizen, the conduct occurs in part of the United States. That's at least ambiguous about whether it's just the defendant's conduct who's the non-citizen. At the very least, that raises the doubt. In addition to all the other things I've pointed out, this is not a normal conspiracy for two reasons. One, it's a money laundering conspiracy that doesn't require any act, any conduct. Two, it has to be analyzed through the lens. Yes, your honor. I've handled many of those cases. I suspected you have. And you know that 846 doesn't have any requirement of an overt act either. That's correct. Nor does RICO. That's right. So there's a number of conspiracy sets that don't require an overt act. That's correct. But they would be utilized the same way. There's a lot of law on that stuff in the law books, you know. That's correct. You referred to this as the first issue. Do you refer to the first issue as a jurisdictional issue? It is a subject matter jurisdictional issue. The government cites Ford in other cases and talks about you. What the government doesn't cite in their brief, which I cite in the reply brief, is Arbaugh. The Supreme Court said in Arbaugh in 2006, in determining whether something is jurisdictional or merits, you look at the language of the statute. This statute explicitly uses the word jurisdiction. This is unquestionably a subject matter jurisdiction statute, just like 1332 would be in a diversity case. The Title VII statute they interpreted in Arbaugh, they didn't use the word jurisdiction about the number of employees. Here they use the word jurisdiction about the conduct of the non-United States citizen and the case has to involve a transaction. Again, you've got to analyze it through the language of 1956 F1 and F2. The government hasn't even talked about the fact that F2 says there has to be a transaction. There's no transaction that's an element of money laundering conspiracy. Why? Why is this an issue? Because they wrote the statute in 1986 before conspiracy was even part of 1956. There were only substantive offenses in 1986 that required transactions. Look at the legislative history. I cite it in footnote 15 of my reply brief. Congress clearly was envisioning... There were plenty of conspiracy charges that could be brought. As you know, the 371, you can bring, you know, you can bring 371 conspiracies if you want. That requires an overt act. If that would have been true. That's right. An overt act is pretty simple. It could be most anything. It's a criminal act, my friend. An overt act. I don't know who the lawyers that you're claiming were ineffective. There were two lawyers. One was a CJA attorney who initially handled the case and filed one motion to suppress. The second was a retained lawyer who filed other motions to suppress and also tried the case. So there were two lawyers. You're saying both of them were ineffective by not raising the only viable constitutional suppression issue there is in this case, which is when the government, when the FBI agents approached him, they said, we would like to ask you a couple of questions, a few questions. It will only take a moment. It will be really quick. Those are all their words. And can we come in and ask you these questions? In Randolph, the Supreme Court said, you look at societal expectations and somebody comes to your door and says, oh, can I borrow your phone real quick? I need to make a phone call. My car's flat. And they stayed in your house for 68 minutes and talk for 144 questions about your personal life. That would go way beyond the expectation that society understands you're giving them when they come in. That's exactly what happened. They lied to him. They were planning on it. Which ones you were claiming were ineffective. And that all tied to that one issue. It's all tied to that one issue. I'm only saying all the suppression issues that were filed, this should have been filed. If I could go back to the government's arguments about venue very quickly. Venue is not jurisdiction. That's well established. Venue is not jurisdiction. So anything they cite about venue being proper, where a co-defendant doesn't overreact, says nothing about 1956 and F1 and jurisdiction. Before you go, Mr. Dean, would you respond to Mr. Pelletier's argument that Actus Reus alone becomes the conduct, even though overt act is not required for conspiracy for money laundering? So in my brief, I discuss the dictionary definition, the legislative history definition of what conduct means in 1956 F1. Although in some abstract sense, looking at general conspiracy law, sure. Maybe forming the conspiratorial agreement could be viewed as an Actus Reus in a case that doesn't require an overt act. But the problem is, again, we got to go filter everything through 1956 and its text and its legislative history. Congress unquestionably envisioned action transaction involvement, not just a mere conspiratorial agreement. And I will repeat and close with this. The statute was written in 1986. There was no money laundering conspiracy. There was no offense that could be committed without an overt act. There had to be some action by a defendant back then for there to be extraterritorial jurisdiction. They did not amend 1956 F1 or 2 when they added the conspiracy clause in 1992. And Whitfield in 2005 said you don't have to have an act or conduct, just the agreement itself. Bottom line is this is a square peg trying to be fit into a round hole. It doesn't work. Congress should have amended it. They didn't. There's at least a lingering doubt, and an appellant should get the benefit of that doubt. This court should remand with instructions to dismiss the indictment for lack of subject matter jurisdiction. Thank you. Thank you both for your arguments. Mr Newton, I note that you're caught upon it. And on behalf of the take on these cases and help us in that regard, we appreciate it. Thank you. And thank you for your able representation in the United States. Thank you. We can't come down and reach you, but know well that we really appreciate it. And thank you very much. And we wish you well and be safe. Thank you. And with that, I'll ask the deputy clerk to adjourn this session of the court. Dishonorable court stands adjourned until this afternoon. God save the United States and dishonorable court.
judges: Roger L. Gregory, Robert B. King, Henry F. Floyd